**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**RONALD GILLIS,**

     **Plaintiff,**

**v.**                                                    **Case No: 5:24-cv-685-PRL**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

     **Defendant.**

---

**ORDER**

Plaintiff appeals the administrative decision denying his application for Supplemental

Security Income (SSI). Upon a review of the record, the memoranda, and the applicable law,

I find that the Commissioner's decision is due to be affirmed.

**I.     BACKGROUND**

For the sake of convenience, the administrative history, which is not in dispute, is

copied from the Government's brief:

> In May 2022, Plaintiff filed an application for supplemental
> security income (SSI), alleging disability beginning on January
> 1, 2022 (Tr. 17, 178–89). The Social Security Administration
> denied Plaintiff's application initially and on reconsideration
> (Tr. 17, 65–68, 71–73). ALJ Julio Ocampo held a hearing on July
> 30, 2024, at which Plaintiff and a vocational expert testified (Tr.
> 17, 28–45, 229). On August 15, 2024, the ALJ issued a decision
> finding that Plaintiff was not disabled within the meaning of the
> Act (Tr. 14–27).2 The Appeals Council denied Plaintiff's request
> for review in October 2024 (Tr. 1–6). This case is now ripe for
> judicial review. See 42 U.S.C. § 1383(c)(3).

(Doc. 13 at 2).

The Plaintiff was 50 years old on the date of the ALJ's decision. (Tr. 47). At the time of the hearing, Plaintiff testified that he lacked a permanent home and would stay with a friend or in a tent near a church. (Tr. 32-33). Based on a review of the record, the ALJ found that the claimant had the severe impairments of cardiomyopathy and heart failure. (Tr. 19). The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).

(Tr. 20).

Based on the RFC, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 22-23). Accordingly, the ALJ determined Plaintiff was not disabled. (Tr. 19-23).

## II.    STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at

step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.   DISCUSSION

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by not addressing whether Plaintiff's alleged hypertension, obesity and arthritis were medically determinable impairments; (2) whether the ALJ properly declined to consider treatment records that predated Plaintiff's application date; and (3) whether the ALJ erred by failing to obtain a consultative examination.

### A. THE APPLICABLE REGULATIONS

As a preliminary matter, Plaintiff acknowledges that his claim is subject to the new regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). In this case, Plaintiff filed his application in 2022, thus the new rules apply.

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence, (4) evidence from nonmedical sources; and (5) prior administrative medical findings. See 20 C.F.R. § 416.913(a)(2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co- workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2) (2017).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 416.920c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 416.920c(c)(1)-(5).

### B. THE ALJ'S DETERMINATION OF PLAINTIFF'S RFC

Because the issues raised by Plaintiff's arguments are closely related, the Court will first address the question of whether the Plaintiff's RFC is supported by substantial evidence.

Review of the ALJ's decision reveals that, on May 25, 2023, Andrew Scanameo, M.D., opined that there was insufficient evidence to adjudicate the allegations. (Tr. 22). Likewise, on January 4, 2024, state agency psychological consultant Michael Plasay, Ph.D., opined that Plaintiff's claim contained insufficient evidence. (Tr. 22). And, on January 5, 2024, S. Haley, M.D., opined that there was insufficient data to evaluate the case. (Tr. 22).

At the time of the decision in August 2024, however, the ALJ found that he was able to find limitations based on the totality of the evidence that by that time included testimony and new medical evidence of record. (Tr. 22). The new evidence included hearing testimony, including Plaintiff's in-person testimony at the hearing on July 30, 2024, and new medical evidence, including treatment records from 2023-2024. (Tr. 21). The ALJ relied on the objective medical evidence of record that revealed generally normal examination findings and no "abnormality." (Tr. 22, 875-888). The ALJ cited objective medical evidence that reflected Plaintiff's heart condition but demonstrated that Plaintiff was in a relatively stable condition. (Tr. 887). As Defendant argues, the ALJ's RFC limiting Plaintiff to light work addressed both Plaintiff's severe cardiac impairments and addressed any limitations due to other alleged impairments such as hypertension. (Doc. 13 at 5).

Substantial evidence relied upon by the ALJ included, for example, routine follow-up visits with Plaintiff's primary care provider reflecting few, if any, abnormal clinical findings. (Tr. 875-85). The evidence also included Plaintiff's visit to the emergency room for a cough and chest congestion. (Tr. 272-73, 886, 890-91).

Plaintiff was noted to have a regular heart rate and rhythm. (Tr. 880, 882, 884). Respiratory examinations were normal. (Tr. 880, 882, 884, 892). With some tenderness and arthritis noted, Plaintiff's back and extremity examinations were generally normal. (Tr. 882,

892). Plaintiff also had normal gross movement, normal gait, unremarkable neurological examinations, and no cyanosis, clubbing, or edema in his extremities. (Tr. 880, 882, 884, 892). The ALJ also had the benefit of the Plaintiff's hearing testimony, during which he described his lifestyle including sleeping in a tent and grocery shopping. (Tr. 39). In other words, these are examples of the substantial evidence upon which the ALJ relied in making the RFC determination.

## C. THE ALJ'S CONSIDERATION OF OTHER IMPAIRMENTS

Plaintiff argues that the ALJ erred at step two by only identifying cardiomyopathy and heart failure as severe impairments. Plaintiff argues that the ALJ failed to consider the impact of Plaintiff's obesity, arthritis, and hypertension on his ability to work. (Doc. 11 at 12). In response, Defendant argues that the ALJ considered all of Plaintiff's impairments in determining Plaintiff's RFC for light work, and the evidence did not support greater limitations.

In support of his argument, Plaintiff cites treatment notes that show Plaintiff had elevated blood pressure consistent with a medical diagnosis of hypertension. (Tr. 886-87, 883, 892). Plaintiff also argues that treatment records show Plaintiff's weight was in the medical range for obesity, with a body mass index over 30. (Tr. 879, 881, 883). Plaintiff further states that he had a diagnosis of arthritis present in his extremities and spinal enthesopathy. (Tr. 879-80).

In response, Defendant argues that the ALJ found that Plaintiff had other severe impairments that restricted him to light work, and that restriction addressed any limitations due to hypertension. Defendant contends that the medical evidence did not support greater

limitations. The Court agrees, and Plaintiff has not identified any evidence in the record suggesting limitations greater than those contained in the RFC.

Plaintiff has the burden to show a medically determinable impairment. *See Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1316 (11th Cir. 2024). A medically determinable impairment "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Medically determinable impairments "must be established by objective medical evidence from an acceptable medical source." *Id.* The claimant's statement of symptoms, a diagnosis, or a medical opinion will not establish the existence of a medically determinable impairment. *Id.*

As to obesity, Defendant contends that Plaintiff has not demonstrated his obesity was a medically determinable impairment. Plaintiff cites records reflecting his body max index above 30 at appointments in July 2023, November 2023, and January 2024. (Tr. 879, 881, 883). Defendant argues, however, that a BMI above 30 does not necessarily equate to obesity. *See* Social Security Ruling (SSR) 19-2p, 2019 WL 2374244, at *3 (May 20, 2019). As SSR 19-2p explains, "[n]o specific weight or BMI establishes obesity as a severe impairment within the disability program," and someone who has a BMI above 30 may not have a medically determinable impairment of obesity if a large percentage of the person's weight is from muscle. *Id.* Defendant points out that "Plaintiff's providers did not diagnose him with obesity, and there is no indication whether Plaintiff's BMI was due to excess body fat or muscle." (Doc. 13 at 5-6, citing Tr. 880, 882, 884).

Defendant's characterization of the medical records is accurate. While Plaintiff has cited to medical records reflecting that Plaintiff's BMI was noted to be above 30 on at least

three occasions (Tr. 879, 881, 883), there is no diagnosis of obesity. Notably, Plaintiff denied having fatigue, myalgias, arthralgias and shortness of breath, and his examinations were generally normal, with no reduced range of motion, and no reduced strength or gait abnormalities. (Tr. 879-84, 892). The Court therefore agrees that Plaintiff failed to meet his burden of demonstrating the existence of obesity as one of his medically determinable impairments.

Likewise, Plaintiff failed to meet his burden of demonstrating that his alleged arthritis was a medically determinable impairment. As Defendant argues, medical notes reflect "arthritis present" in Plaintiff's extremities during examinations in July 2023 and January 2024, but the provider did not describe the clinical abnormalities that supported such a conclusion. (Tr. 880, 884). Defendant contends that the evidence relied upon by Plaintiff amounts to a mere diagnosis, which is insufficient to prove a medically determinable impairment. Indeed, a diagnosis alone is an insufficient basis for a finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986).

Nonetheless, the ALJ found that Plaintiff had other severe cardiac conditions and accounted for them by limiting Plaintiff to light work. (Tr. 19-20). Despite not expressly including limitations for hypertension, alleged obesity and arthritis, the record reflects that the ALJ considered the entire record in determining that Plaintiff had the RFC for light work. In reaching this decision, the ALJ expressly cited medical records that contain Plaintiff's high blood pressure readings, BMI above 30, and arthritis diagnosis. (Tr. 22, 875-85, 891-92). It is

apparent that the ALJ considered the full range of Plaintiff's alleged impairments when determining that Plaintiff could perform light work.

Importantly, Plaintiff has not met the burden of proving that the alleged impairments of hypertension, obesity and arthritis caused greater functional limitations than light work. *See Howard v. Comm'r, Soc. Sec. Admin.*, No. 23-13701, 2024 WL 4381008, at *1 (11th Cir. Oct. 3, 2024). The ALJ determined Plaintiff had impairments that qualified as severe. As a result, even if some of Plaintiff's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ proceeded to the remaining steps of the five-step analysis. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

The ALJ's decision specifically referenced medical records that reflect the additional impairments alleged by Plaintiff. It is therefore apparent that the ALJ considered the full range of Plaintiff's alleged symptoms. As explained above, the RFC determination was supported by substantial evidence. The ALJ was not required to discuss every piece of evidence in the decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

### D. EVIDENCE DATED PRIOR TO THE APPLICATION DATE

Plaintiff next argues that the ALJ erred by focusing only on records dated after Plaintiff's application date and not considering prior records.

In the decision, the ALJ observed:

> As previously indicated, the claimant must establish disability within the meaning of the Social Security Act from May 11, 2022. Thus, the claimant's testimony and evaluation of the medical evidence will focus on that relevant period. While there are records that discuss the relevant impairments and conditions, the timeframe of these are outside of the appropriate timeframe. I have reviewed all records available but have only considered the very few pages that fall within the relevant timeframe.

(Tr. 21). Plaintiff argues that the ALJ erred because evidence prior to the application date is relevant and should have been considered, depending on the facts of the individual case.

In response, Defendant contends that Plaintiff "misunderstands the applicable regulation," and that evidence that pre-dated Plaintiff's application was not probative of his conditions during the relevant period. (Doc. 13 at 9). Defendant argues that, in Plaintiff's case, the ALJ had to develop a complete medical history beginning on January 1, 2022. (Doc. 13 at 9).

The applicable regulation, 20 C.F.R. § 416.912(b)(1), states:

> (1) *Development.* Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary **or unless you say that your disability began less than 12 months before you filed your application.** We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports. (Emphasis added.)

In this case, Plaintiff alleged that his disability began on January 1, 2022, and filed his application on May 11, 2022. (Tr. 179). Therefore, under the circumstances presented in this case, the ALJ's consideration of records only from the "relevant period," was not error. (Tr. 21). First, it is worth noting that there were no records that fell between the dates of January 1, 2022, and May 11, 2022. Second, as the ALJ expressly stated, he "reviewed all records available" but only considered those that fell within the "relevant timeframe." (Tr. 21). This statement indicates that he reviewed evidence that predated Plaintiff's alleged onset date to confirm that the records were not in close proximity to the onset date and relevant to Plaintiff's impairments. Third, as Defendant points out, without contradiction, the most recent record that pre-dated Plaintiff's May 2022 application date was a treatment note from

September 2021 (Tr. 886), and that record predated Plaintiff's alleged onset date of January 1, 2022.

The September 2021 treatment record reflects that Plaintiff visited Citrus Cardiology Consultants, PA, with reports of chest pain, elevated blood pressure, and edema. (Tr. 886). The note does not reflect findings that are probative of his condition as of his May 2022 application date, nor does it reflect a basis for limitations beyond those included in the ALJ's RFC. The next most recent medical evidence was dated November 2019. (Tr. 272-73, 846-74). Plaintiff does not allege that the ALJ failed to obtain any relevant medical treatment records. Plaintiff also does not contend that records prior to the application date establish functional limitations beyond those accounted for in the RFC.

Defendant argues that, after reviewing the entire record, the ALJ reasonably found that only the records after Plaintiff's application date were probative of his condition during the relevant period. Upon review and for the reasons explained above, the Court finds that the ALJ did not err in failing to consider evidence dated prior to the application date.

### E. THE LACK OF A CONSULTATIVE EXAMINATION

Finally, Plaintiff again contends that the RFC is not supported by substantial evidence. Plaintiff cites the lack of medical opinion evidence, and the fact that the consultants found that the record was insufficiently developed. Plaintiff argues that the ALJ should have obtained a consultative examination.

First, for the reasons already explained above, the undersigned disagrees and finds that the RFC is supported by substantial evidence in the record. Next, the undersigned finds that a consultative examination was not necessary in this case.

It is well established that a hearing before an ALJ in Social Security cases is

inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence in support of his claim, while the ALJ has "a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); *see also Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

In fulfilling the duty to conduct a full and fair inquiry, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). However, the ALJ is not required to order an additional consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. *Good v. Astrue*, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision."); *see also Ingram*, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In evaluating the necessity for a remand, the Court is guided by "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* (citations omitted).

Having reviewed the record in this case, the Court finds that the ALJ fulfilled his duty to develop a full and fair record. The record before the ALJ contained relevant records sufficient for the ALJ to consider Plaintiff's alleged impairments. That evidence includes treatment records relevant to Plaintiff's condition, evidence regarding Plaintiff's activities and

lifestyle, and Plaintiff's own in-person testimony before the ALJ at the hearing. (Tr. 29). The Court is satisfied that the record (though not voluminous) was sufficient to enable the ALJ to determine Plaintiff's could perform a range of light work.

Further, the ALJ found it significant that the Plaintiff received little treatment during the relevant period. (Tr. 21). Plaintiff's first treatment during the relevant period related to him presenting with cough and chest congestion in February 2023. (Tr. 21, 891). Plaintiff's next treatment was with a new primary-care provider in July 2023. (Tr. 883-85). Plaintiff later had two follow up visits with his primary care provider, in November 2023 and January 2024. (Tr. 21, 879-80, 881-82).

Plaintiff's routine, minimal care supports the RFC for light work. *See Haynes v. Comm'r of Soc. Sec.*, No. 8:18-CV-2673-T-MAP, 2019 WL 5884669, at *6 (M.D. Fla. Nov. 12, 2019) (the claimant's receipt of only conservative treatment supported the ALJ's RFC finding of light work); and *Hebert v. Kijakazi*, No. CV 20-00405-B, 2021 WL 5865357, at *8 (S.D. Ala. Dec. 2, 2021). Defendant argues that Plaintiff's routine, minimal follow-up visits with his primary care provider belie Plaintiff's contention that a consultative examination was necessary due to his "complex" medical history.

As to the medical consultants' statements regarding the insufficiency of the record, Defendant accurately points out that the record before the consultants contained evidence only from 2019, well prior to Plaintiff's application date. (Tr. 48, 53). The record before the ALJ, in comparison, contained multiple treatment records from the relevant period and other evidence, including Plaintiff's hearing appearance and testimony. (Tr. 22, 875-85, 890-907).

Under the circumstances of this case, the ALJ did not err in declining to obtain a consultative examination. *See Hayne*s, 2019 WL 5884669 at *6 (rejecting the argument that a

consultative examination was needed where the ALJ's RFC finding of light work was supported by claimant's conservative treatment and normal examinations).

For the reasons explained above, I find that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's findings regarding Plaintiff's condition and the RFC. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

## IV. CONCLUSION

Upon due consideration and for the reasons stated above, the ALJ'S decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDRED** in Ocala, Florida on March 12, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record
Unrepresented Party
Courtroom Deputy